325 P.2d 835

W. W. DICK, Superintendent of Schools of Maricopa County; James G. Hart, James T. O'Neil and James E. Lindsay, members of Board of Supervisors of Maricopa County; Tolleson School District No. 17, Fowler School District No. 45, Tolleson High School District No. 214; and Leonard Hamilton, Virgil Tolby, Lorna Cowan, Lawrence G. Robertson and Norman Andersen, Trustees of Tolleson High School District No. 214, Appellants,

v.

Vernon CAHOON, Eugene Parker, R. C. Pogue, Trustees of Union School District No. 62, and Eugene Parker, a resident of Union School District No. 62, Appellees.

L. M. BYRD, Cross-Appellant,

v.

C. L. SPARKS, County Assessor of Maricopa County; James T. O'Neil, James G. Hart and James E. Lindsay, Board of Supervisors of Maricopa County; Phil Isley, Treasurer of Maricopa County; and W. W. Dick, Superintendent of Schools, County of Maricopa, State of Arizona, Cross-Appellees.

No. 6497.

Supreme Court of Arizona.

May 21, 1958.

Charles C. Stidham, County Atty. of Maricopa County, and Jarrett S. Jarvis, Deputy County Atty., Phoenix, for appellants and cross-appellees.

Hash & Bernstein, Phoenix, for appellees and cross-appellant.

WINDES, Justice.

School District No. 62 located in Maricopa county, known as and herein designated Union district, in March 1956 comprised an area of 6½ sections of farming land. A petition signed by 19 electors of School District No. 17, herein designated as Tolleson district, was filed with the county superintendent of schools requesting annexation to Tolleson of two sections of Union district's area. There was likewise filed with the county superintendent a petition signed by 20 electors of School District No. 45, herein designated as Fowler district, requesting that two other sections be detached from Union district and annexed to Fowler. There were three opposing petitions filed, one from Tolleson with 22 signatures; one from Fowler with 21 signatures; and one from Union with 23 signatures. The superintendent made an investigation and held a joint hearing upon the petitions. Thereafter he recommended to the Maricopa county board of supervisors that the petitions be allowed and that the four sections be detached from Union and two be annexed to Tolleson and two be annexed to Fowler. The board of supervisors held a hearing and by a majority vote adopted the superintendent's recommendation and ordered the annexations. The trustees of Union district filed complaint in the superior court of Maricopa county against the county school superintendent, the board of supervisors, and Tolleson and Fowler districts for certiorari and an injunction to prevent the annexations. By stipulation of counsel writ of certiorari was issued, the matter was heard by the court on the record submitted, supplemented by some sworn testimony, and judgment was rendered for the plaintiffs to the effect that the purported annexations were void and of no effect and directing that the defendants be permanently enjoined from changing the boundaries of Union district. Defendants appeal.

The statute in effect at the time these proceedings were instituted was subsection A of section 15–403, A.R.S., which provided:

"When ten or more qualified school electors residing in a [school] district desire that the boundaries of the district be changed * * *, they may present a petition to the county school superintendent setting forth the change of boundaries desired and the reasons therefor. The superintendent shall approve or disapprove the petition and transmit it to the board of supervisors whose action on the petition shall be final."

202

The record shows that when the petition to annex to Tolleson was filed there were three Union district children attending Tolleson and the reason given in the petition for annexing the two sections is that children residing in the two sections are attending Tolleson "as a matter of choice and convenience". At the time the Fowler petition was filed there were six children attending Fowler who resided in the two sections sought to be annexed thereto. The reason for making this annexation was the same as given by Tolleson, to-wit: that children residing in the areas to be annexed are attending Fowler "as a matter of choice and convenience".

The 1955 assessed valuation of Union district was $283,610. The assessed valuation of the two sections proposed to be taken from Union and given to Tolleson was $105,330 and of those to be deleted from Union and added to Fowler was $68,090, or a total assessed valuation taken from Union of $173,420 leaving only $110,190 assessed valuation in Union. Union district's tax rate in 1955 was $2.27 and after the deletion of the four sections this rate for 1956 was $5.27.

There is no evidence or suggestion worthy of mention of any inadequate or inconvenient transportation facilities as to distance or bus services. The principal reasons given by the county superintendent for advocating these annexations are inadequate educational facilities and the method of operation. At the board of supervisors' hearing the county superintendent testified that his only concern was that the boys and girls of the district have a better opportunity to receive a better education and that if he had a child living in the district he would transport it 25 miles before he would want it to go to Union. He likewise advised what would be left of the district should go into a large district where there was a rounded educational system. In the trial court he testified that the school buildings were inadequate for children at this time; that there was no office for the principal; that the library was inadequate; that he thought the school should be completely dismantled because the children were not getting an adequate education; that the school did not belong there now; and that an election was held to annex the entire district but failed by a small margin.

Dr. Crnkovic, the assistant county superintendent, as a witness admitted it was unwise to make a small district smaller and that it was not feasible to run the district on a taxable valuation of $110,000 or even $280,000.

Subsection A, supra, gave the board of supervisors the jurisdiction in the exercise of a sound discretion to change the boundaries of school districts. Should the board act arbitrarily, oppressively or in disregard of the best interests of the territory and children affected, such action

would be in excess of its jurisdiction and void. The limits upon such a board in exercising this discretion is well stated in 78 C.J.S. Schools and School Districts § 27, p. 676:

"The discretion vested in an officer, board, or other agency must be exercised with great care, in a reasonable manner, and not maliciously, arbitrarily, or wantonly, or so as to discriminate unduly against any persons, in good faith, for the best interests of the people of the districts affected, on terms that are just and equitable and which do not cause unnecessary hardship, and with regard only for the public interest, and not the private interest of any individual or group of persons."

■ Applying this principle to the facts herein we are unable to discover any reasonable basis for the board's action in deleting from Union approximately two-thirds of its taxable area and nearly two-thirds of its assessed valuation and thereby causing the school tax rate to more than double from $2.27 to $5.27 per $100 valuation. This disastrous effect on Union was accomplished to satisfy the choice of nine children with an excess of 40 children left to be educated somehow after the district had been stripped. If the facilities of Union are inadequate as the county superintendent contends, a reasonable and just solution for the benefit of all cannot possibly be to provide adequate facilities for a few to the detriment of many. The action of the board is not a reasonable solution. This is recognized by the county superintendent when he testified that Union should be dismembered. It is recognized by the assistant county superintendent when he admits that it is not feasible to run the district in its depleted condition. The record indicates that, if the board's action be allowed to stand, in all probability it will ultimately result in the dissolution of Union district. If the district is to be abolished, it must be done under the appropriate statute and not indirectly by deletion and annexation. Dissolution cannot be forced in this manner. Nor can an exorbitant and unreasonable burden be placed upon Union to satisfy the choice of a few students who desire to attend an adjoining school.

■ L. M. Byrd filed an action against the county supervisors and others seeking to restrain the levy of the increased school tax rate on Union district. That case was tried separately resulting in a judgment denying injunction. Pursuant to stipulation the cases were consolidated. Admittedly, the questions presented in that case have become moot and we decline to pass thereon.

The judgment is affirmed.

UDALL, C. J., and PHELPS, STRUCKMEYER and JOHNSON, JJ., concurring.