DOMINICK FABIO v. CITY OF ST. PAUL AND OTHERS.

126 N. W. (2d) 259.

February 7, 1964—No. 39,020.

*Irving Gotlieb,* for appellant.

*Donald L. Lais,* Corporation Counsel, and *Robert E. O'Connell,* Special Assistant Corporation Counsel, for respondents.

OTIS, JUSTICE.

Plaintiff, Dominick Fabio, seeks a declaratory judgment enjoining the city of St. Paul and its officials from requiring him to retire from the police department at the age of 65, and declaring Minn. St. 423.075 unconstitutional as applied to the administrative practices followed by defendants. This appeal is taken by plaintiff from a summary judgment entered by the district court in favor of the defendants.

The plaintiff began his employment in the St. Paul Police Depart-

ment on July 25, 1925, and continued in that position until he reached the age of 65 years on January 5, 1963. The only issue before this court is whether his compulsory retirement at age 65 under § 423.075[1] denies plaintiff constitutional rights under Minn. Const. art. 1, § 2, and art. 4, §§ 33 and 34, and U. S. Const. Amend. XIV.[2]

---

[1]"Every employee, officer, or person on the payroll of any fire or police department in any city of the first class who is designated as a future beneficiary by the rules of any tax-aided pension, relief, or retirement fund established and maintained by authority of the laws of this state, shall retire upon reaching the age of 65 years * * *."

Minn. St. 1961, § 423.075, was amended by L. 1963, c. 802, to repeal an exemption applicable to veterans by the addition of the following provision:

"Subd. 2. The provisions of Minnesota Statutes 1961, Sections 197.45, 197.46, and 197.47, shall not be applicable to subdivision 1 of this section." This act was made effective January 1, 1964, and of no force and effect prior to that date.

[2]Minn. Const. art. 1, § 2, provides in part: "No member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

Minn. Const. art. 4, § 33, provides: "In all cases when a general law can be made applicable, no special law shall be enacted, except as provided in Article XI; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law * * * granting to any private corporation, association, or individual any special or exclusive privilege, immunity or franchise whatever or authorizing public taxation for a private purpose. The inhibitions of local or special laws in this section shall not be construed to prevent the passage of general laws on any of the subjects enumerated."

Minn. Const. art. 4, § 34, provides: "The legislature shall provide general laws for the transaction of any business that may be prohibited by section one (1) of this amendment, and all such laws shall be uniform in their operation throughout the State."

U. S. Const. Amend. XIV, § 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or im-

The St. Paul City Charter, § 350, creates a department of public safety consisting of five bureaus: (1) Bureau of Police, (2) Bureau of Fire Protection, (3) Bureau of Health, (4) Bureau of Police and Fire Alarm Telegraph, and (5) Bureau of General Administration. It appears without dispute that a number of employees have succeeded in avoiding compulsory retirement, applicable only to those on fire or police payrolls, by transferring to the administrative or the police and fire alarm payrolls. In addition, prior to the 1963 amendment, employees enjoying the benefits of the Veterans' Preference Law, §§ 197.45, 197.46, and 197.47, have been expressly exempt from compulsory retirement. This included most of the members of the department. Furthermore, the act does not apply to police employed by the department of parks and playgrounds.

In essence, the plaintiff asserts that because there are a great number of police department employees who have by one means or another avoided the effect of compulsory retirement without apparent detriment to the efficient operation of city government, the statutory classification which requires retirement for those on the police payroll at 65 years of age is not germane to the purposes of the law, is arbitrary, lacks uniformity in application for those similarly situated, and is therefore unconstitutional.

The trial court took the position that the validity of § 423.075 was adjudicated in Burns v. City of St. Paul, 210 Minn. 217, 297 N. W. 638. The statute was there sustained against an attack that by permitting them to remain employed until their retirement benefits had matured, it discriminated in favor of persons who had not served sufficient time to earn a pension at the age of 65. Here the plaintiff's only claim is that he is accorded unconstitutional treatment under an otherwise valid statute because he is subjected to the effect of compulsory retirement while others similarly situated have been permitted to remain employed on different payrolls. It is therefore argued that the classification by payroll is arbitrary and unreasonable.

---

munities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

As we view the basic object of § 423.075, it is to remove from active duty police officers who have reached an age where the hazards of their occupation and the physical demands necessary to perform their duties make it desirable that they be replaced by younger employees. To accomplish this purpose police officers must either retire on the pension provided by the statute or transfer to a position which makes less arduous physical demands on them. When originally enacted, § 423.075 apparently applied only to employees in strenuous and hazardous positions. However, by our decision in State ex rel. Williams v. St. Paul Fire Dept. Relief Assn. 175 Minn. 600, 222 N. W. 283, together with a ruling of the Ramsey County District Court in State ex rel. McDonald v. St. Paul Police Relief Assn., File No. 244946, benefits of the police retirement plan were extended to nonhazardous employment as well. The nature of such work makes it less urgent that these employees retire from active duty upon reaching 65. Hence, a transfer to a different payroll may be effected without any substantial change in the duties they perform and permits their continued service beyond retirement age. Officers on active hazardous duty who are not qualified by training or experience for clerical work will normally have greater difficulty securing a transfer to a payroll where they can continue to be useful. The discrimination in practice which may result does not, in our opinion, affect the validity of the statute itself or constitute a denial of equal protection of the laws with respect to its application. There is nothing in the record before us which suggests that any police officer who has been on active, arduous duty has been permitted to continue in the same kind of service after being transferred from the police payroll to a different payroll.

Nor does the record indicate plaintiff is needed elsewhere in the department or qualified for work on any other payroll where the duties to be performed are more sedentary than those he previously discharged. In the absence of a showing that persons similarly situated are accorded substantially different treatment, we are not at liberty to question the wisdom of the city's administrative procedures. It is not our function to speculate on the motives prompting practices of the

kind we here consider unless they are manifestly arbitrary and discriminatory.

In deciding whether classification in a given situation offends constitutional principles, the rules of construction generally governing legislation are relevant. In this area there is a growing judicial tendency to permit the exercise of broad discretion.[3] The fact that measures taken are not directed at all of the evils to be corrected does not invalidate the application of the statute if the problem is dealt with according to practical exigencies and experience in a manner which is germane to its solution.[4] Nor does valid classification depend on ironclad uniformity.[5] The grounds for treating differently persons similarly situated may be slight, provided the discrimination is based on a reasonable distinction which is supported by the facts.[6] Tested by these standards, we hold the classification here involved is not arbitrary but is based on practical considerations which make its application to plaintiff reasonable and proper.

Affirmed.

---

[3]Anderson v. City of St. Paul, 226 Minn. 186, 194, 32 N. W. (2d) 538, 543; Arens v. Village of Rogers, 240 Minn. 386, 396, 61 N. W. (2d) 508, 516, appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096; Williams v. Rolfe, 262 Minn. 284, 297, 114 N. W. (2d) 671, 679.

[4]State v. Broden, 181 Minn. 341, 346, 232 N. W. 517, 519; Loew v. Hagerle Brothers, 226 Minn. 485, 488, 33 N. W. (2d) 598, 601.

[5]Anderson v. City of St. Paul, *supra.*

[6]State v. Pehrson, 205 Minn. 573, 577, 287 N. W. 313, 315, 123 A. L. R. 1045; Kaljuste v. Hennepin County Sanatorium Comm. 240 Minn. 407, 417, 61 N. W. (2d) 757, 764.