**Paul WEISS, Plaintiff,**

v.

**Reverend Michael WALSH, S.J., in his capacity as President of Fordham University; Paul J. Reiss, in his capacity as Vice-President for Academic Affairs of Fordham University; Robert Roth, S.J., in his capacity as Chairman of the Department of Philosophy of Fordham University; Ewald B. Nyquist, in his capacity as Commissioner of Education of the State of New York, Defendants.**

**No. 70 Civ. 4763.**

United States District Court,
S. D. New York.

Feb. 24, 1971.

Jonathan A. Weiss, New York City, for plaintiff.

Royall, Koegel & Wells, New York City, by Caesar L. Pitassy, Joseph H. Spain, Edward R. Leydon, New York City, for defendants Michael Walsh, Paul J. Reiss and Robert Roth.

Louis J. Lefkowitz, Atty. Gen. of N. Y., by Joel Lewittes, Asst. Atty. Gen., for defendant Ewald B. Nyquist.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, by Morris B. Abram, New York City, for the amici curiae, National Retired Teachers Ass'n, Inc. and American Ass'n of Retired Persons.

## OPINION

TYLER, District Judge.

Plaintiff, a metaphysician of reknown, alleges that Fordham University offered him the Albert Schweitzer Chair in Humanities only to withdraw the alleged offer on the sole ground that he had passed his sixty-fifth year. Seeking both injunctive and monetary relief, his five-part complaint asserts that the alleged conduct violates: (1) the First, Fifth, and Fourteenth Amendments of the United States Constitution and Article 1, Section 11 of the New York Constitution; (2) the "letter and spirit" of New York Education Law, McKinney's Consol.Laws, c. 16, § 239; (3) the legislative policy of New York's Education Law § 3027 and Public Authorities Law, McKinney's Consol.Laws, c. 43–A, § 2577; (4) federal policy as expressed in the Older Americans Act of 1965, 42 U. S.C. § 3001 *et seq.*, Executive Order No. 11141, 29 Fed.Reg. 2477 (1964), and the 1946 Employment Act, 15 U.S.C. § 1021 et seq. and (5) New York Executive Law, McKinney's Consol.Laws, c. 18, § 296. Breach of contract is not alleged as a specific ground for relief. Defendants meet plaintiff's request for a preliminary injunction *pendente lite* with a Rule 12(c) motion for judgment on the pleadings dismissing the entire complaint. 28 U.S.C. Federal Rules of Civil Procedure.

Jurisdiction of the district court is invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, which dispenses with the requirement that available state remedies be exhausted. Jurisdiction may also be premised upon diversity of citizenship, plaintiff being a resident of the District of Columbia and all defendants, of New York. The remuneration afforded the occupant of the Chair alone exceeds the $10,000 jurisdictional minimum. 28 U.S. C. § 1332(a) (2).

The complaint alleges that a firm offer to nominate and award to plaintiff the Schweitzer Chair, of which Fordham University was the designated recipient, was made on or about April 22, 1970 by Dr. Arthur Brown, the then Vice-President for Academic Affairs at Fordham. Thereafter, by letter of September 3, 1970, defendant Reiss, Dr. Brown's successor, advised Professor Weiss that the State Department of Education had indicated its intention to refuse approval of his proposed nomination by reason of his advanced age. Thus it is, according to plaintiff, that notwithstanding that Fordham found him preeminently qualified to fill the Schweitzer Chair, the actual or intended offer was withdrawn because of the eleventh-hour interjection of an arbitrary age limitation by some state board or official.

Plaintiff, now in his seventieth year and Heffer Professor of Philosophy at Catholic University of America in Washington, D. C., states (although not by personal affidavit) that his physical health and mental capacity are excellent —i. e. that he has the requisite stamina and acuity to fulfill the responsibilities of the Schweitzer Chair. And, as counsel for the *amici curiae*, the National Retired Teachers Association, Inc. and the American Association of Retired Persons, argues by reference to biographies of former giants in philosophy, his prognosis for length and breadth of productivity is excellent as well. In this litigation, however, the court is called upon to judge neither the brilliance nor worthiness of a man, but the merit of his legal claims.

The plaintiff moved for a preliminary injunction pursuant to Fed.R.Civ.P. 65(b), 28 U.S.C., to assure that the Schweitzer Chair to which he lays claim will not be offered to another candidate pending the outcome of this litigation. For the primary reason that plaintiff has failed to show sufficient likelihood of success to warrant freezing the *status quo*, the motion for preliminary relief was denied at the conclusion of oral argument on February 5, 1971. The basis for this disposition is discussed in connection with defendants' motion for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(c). Dismissal is granted in part and denied in part, the latter conditioned upon plaintiff's filing an amended complaint as directed hereinafter. Defendant Nyquist's separate motion for dismissal as to himself is also denied at this stage.

■ Plaintiff's so-called first "cause of action" alleges violations of the First, Fifth and Fourteenth Amendments of the United States Constitution as well as Article I, Section 11 of the New York Constitution, which is the state's counterpart of the Fourteenth Amendment. As to the claim that plaintiff's First Amendment rights are infringed by defendants' alleged refusal to nominate and approve him for the Schweitzer Chair because of his advanced years, dismissal is appropriate as a matter of law. Where denial of employment has been held to violate the First Amendment, it is not because the Amendment protects jobs, even academic ones; it is rather that it prevents the conditioning of employment on some non-exercise of speech or associational rights. United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967), Greene v. McElroy, 360 U.S. 474, 19 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). No such allegation is made herein.

■ Secondly, the absence of specific reference to age in the Fourteenth Amendment does not alone insulate age classifications from constitutional scrutiny any more than does the absence of mention of poverty or residency for example. Harper v. Virginia State Board of Education, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968). But being a classification that cuts fully across racial, religious, and economic lines, and one that generally bears some relation to mental and physical capacity, age is less likely to be an invidious distinction. Even where the Equal Protection Clause is buttressed by the Sixth Amendment's cross-sectional principle respecting jury selection, the Constitution tolerates some variation in eligibility at the ends of the age spectrum. Cf. Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), United States ex rel. Epton v. Nenna, Warden, D.C., 281 F.Supp. 388 (1970). Nor is there a constitutionally mandated minimum age for voting in state and local elections. Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). Even assuming that equivalent importance is accorded to employment opportunity in our constitutional scheme, and given the protection afforded such opportunity by the Due Process and Equal Protection Clauses, I am constrained to hold that Professor Weiss is not the victim of an invidious and impermissible discrimination. Notwithstanding great advances in gerontology, the era when advanced age ceases to bear some reasonable statistical relationship to diminished capacity or longevity is still future. It cannot be said, therefore, that age ceilings upon eligibility for employment are inherently suspect, although their application will inevitably fall injustly in the individual case. If the precision of the law is impugnable by the stricture of general applicability, vindication of the exceptional individual may have to attend the wise discretion of the administrator. On its face, therefore, the denial of a teaching position to a man approaching seventy years of age is not constitutionally infirm. The same result obtains under Article I, Section 11 of the New York Constitution.

The foregoing, however, does not entirely dispose of plaintiff's Fourteenth Amendment claim. If, as the *amici curiae* have argued, the age ceiling on eligibility for the state-endowed chairs has not been consistently applied, the Equal Protection Clause might have been violated. Cf. Ali v. Division of State Athletic Commission, 316 F.Supp. 1246 (S.D.N.Y.1970). It appears from the affidavits submitted by the *amici* that one or two recipients of section 239 positions may have been appointed after attaining the age of 65; it may also be that discovery will illuminate past practices further supporting a claim of discriminatory enforcement. From the present record, however, the likelihood of success does not appear great.

For a second "cause of action" or theory of recovery, plaintiff charges that the imposition of an age ceiling violates the letter and spirit of section 239 of the New York Education Law in that no age limitation is compatible with the express legislative purpose of attracting giants in their disciplines to New York State institutions of higher learning.

On its face, however, the power to constrict eligibility appears implicitly conceded by statute. This power seems encompassed by the delegation in subsection 2 to the Regents of authority to set terms and conditions of the contract. Nor is there support in the statutory scheme for plaintiff's underlying contention that the recipient university's choice must be accorded special sanctity. Since, however, the legislative history may yet show that the Regents exceeded their statutory authority in interjecting this age limit, the court reserves decision on this to permit fuller exposition. Alternatively, since there is confusion in the record regarding the affiliation or office of the person allegedly responsible for the interposition of this qualification, plaintiff may intend to prove—as the argument of the *amici* suggested—that the interference of the State Department of Education was unlawful or irregular.

The third, fourth and fifth "causes of action" assert related state and federal statutes to support the argument that age discrimination is unlawful. The fourth attempts to rely upon heretofore cited provisions evidencing federal policy against age discrimination in employment. To the extent these bolster plaintiff's position, they were considered in connection with the constitutional claims. But federal policy which falls short of being a constitutional mandate does not provide a basis for relief even against blatantly inconsistent state policy or practice.

The third and fifth causes refer to arguably relevant state pronouncements respecting the impermissibility of age discrimination. N.Y. Executive Law § 296, N.Y. Education Law § 3027, N.Y. Public Authorities Law § 2577. Undoubtedly, these statutes evidence New York's growing concern with the problem of age discrimination. But, Executive Law, section 296's ban on age discrimination in employment has been construed by the Appellate Division as being qualified by its own subsection 3–a which protects from such discrimination persons between 40 and 65 years of age only. American Airlines v. State Commission for Human Rights, 29 A.D.2d 178, 286 N.Y.S.2d 493 (1st Dept.1968). So long as no constitutional issue is affected, the state court's construction of its own statute is binding on the federal courts. Moreover, the same subsection's explicit exemption for good faith retirement systems would apply with equal force to employment beyond retirement age. The remaining two statutes do not by their terms apply to university positions, even those supported by public funds.

In summary, two theories of recovery survive: (1) selective enforcement of the age criteria; and (2) exceeding the authority delegated by statute with respect to selection standards. To pursue these claims, plaintiff, if he can, will be required to file an amended complaint setting out these two theories of recov-

ery with greater clarity. Other constitutional claims as conceptualized in plaintiff's original complaint, briefs, etc. are deemed dismissed in accordance with defendants' Rule 12(c) motion. My extreme skepticism concerning the relevance of the various statutes relied upon by plaintiff is plain. Since, however, none of these so-called causes of action (Nos. 3, 4 and 5 of plaintiff's brief) are more than citations in support of the actual claims for relief, they do not appear in a posture susceptible to dismissal.

The Commissioner of Education's individual motion to dismiss the complaint as against himself on the ground that he is improperly joined as a defendant is also denied without prejudice. While section 239 of the Education Law directs the Regents to contract with scholars to fill the chairs and section 301 thereof makes the office of the Commissioner subject to the direction and control of the Regents, the impropriety of having joined Nyquist is not beyond dispute. The letters of Fordham officials received by plaintiff refer to the State Department of Education as having discouraged plaintiff's nomination. In addition, the last sentence of section 301 permits delegation by the Regents of their powers to the Commissioner.[1] Since, however, it may result that Nyquist is not the proper defendant, the court grants plaintiff leave to add the Board of Regents as defendant in this action.

Finally, it appeared at oral argument that plaintiff wishes to press a claim for breach of contract, cognizable by this court pursuant to federal diversity jurisdiction. 28 U.S.C. § 1332(a)(2). The so-called offer letter, annexed to the complaint, falls short of a firm offer as a matter of fact or law. At best, Dr. Brown's letter stated the intention of Fordham University to offer plaintiff a faculty position contingent on certain future occurrences. On the basis of this letter, Fordham denies the making of an offer. Since, however, this is a service contract and, therefore, without the statute of frauds, there is no bar to the admission of parol evidence to establish the letter's greater import, as urged by plaintiff, or the existence of an independent oral contract. Plaintiff, therefore, will be permitted to plead a breach of contract in the amended complaint.

An amended complaint consistent with the rulings herein must be served and filed within twenty (20) days of the date below.

It is so ordered.

---

1. "The regents may adopt rules conferring and imposing upon the commissioner of education such additional powers and duties as may be required for the effective administration of the department and of the state system of education."