**Loretta ARMSTRONG, Plaintiff,**

**v.**

**Samuel HOWELL et al., Defendants.**

**Civ. No. 72-0-510.**

United States District Court,
D. Nebraska.

Feb. 7, 1974.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This matter comes on for determination on cross-motions for summary judgments filed respectively by both plaintiff and defendants, the case having been fully and finally submitted to this Court on January 11, 1974, on a stipulation of facts as contained in the pretrial order, and elsewhere, and on briefs and oral arguments of the respective parties and without formal hearing.

In her complaint filed herein, plaintiff seeks to have this Court declare invalid and enjoin enforcement of the retirement policies of the Douglas County Civil Service Commission insofar as it imposes a mandatory retirement at age sixty-five years. This policy is challenged by plaintiff on the grounds that it is in conflict with the provisions contained in the Fourteenth Amendment of the Constitution of the United States.

Defendants answer by way of a general denial and expressly deny that plaintiff's Fourteenth Amendment rights are violated by the Douglas County Civil Service Commission.*

Jurisdiction is conferred by 28 U.S.C. § 1343(3), (4) which provides for original jurisdiction of this Court in all suits commenced under and authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution of the United States.

The sole issue for determination here is whether the conduct of the defendants deprived plaintiff of rights guaranteed her by the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United

———◆———

Legal Aid Society of Omaha, Vard R. Johnson and Terrence J. Ferguson, Omaha, Neb., for plaintiff.

Douglas County Atty.'s Office, Donald Knowles and Arthur Raznick, Omaha, Neb., for defendants.

* Original defendants were Samuel Howell, Marvin Reifschneider, Dick Schoettger, Roger Anderson and Dan Wiedmeier. After commencement of this action, James Svoboda and Norman Souba were substituted as parties defendant for original defendants Roger Anderson and Richard Schoettger inasmuch as defendants Svoboda and Souba replaced the latter two defendants as commissioners of the Douglas County Civil Service Commission. Further, inasmuch as defendant George L. Rickey replaced defendant Dennis Hume as personnel director of Douglas County, Nebraska, after commencement of this action, defendant Rickey has been substituted as a party defendant for the original defendant Dennis Hume. All defendants, with the exception of defendant Rickey are members of the Douglas County Civil Service Commission. Defendant Rickey is personnel director of Douglas County, Nebraska, and administrative head of the personnel department.

States and whether upon a finding of unconstitutional deprivation, plaintiff should have injunctive relief and retroactive lost wages. Since the Court has concluded that plaintiff has not been deprived of rights guaranteed her under the Fourteenth Amendment to the Constitution of the United States and that the policy challenged by plaintiff is not in conflict with any provision contained in the Fourteenth Amendment, it is unnecessary to discuss plaintiff's claim for injunctive relief and lost wages. With her original complaint filed herein plaintiff also filed a motion for a temporary restraining order which was overruled by this Court (Judge Robert V. Denney).

As far as material to a decision in this case, the Court finds the facts to be as follows:

Prior to December 31, 1972, plaintiff was an employee of the Douglas County Hospital, having commenced such employment on April 26, 1969, at which time the plaintiff was sixty-six years of age. Plaintiff was employed as a medical records transcriber and worked continuously and efficiently as such until her termination on December 31, 1972, at which time the plaintiff was sixty-nine years of age. Plaintiff customarily worked an average of thirty hours per week and there is no controversy over the fact that at the time of her mandatory retirement and termination on December 31, 1972, plaintiff was an employee in good standing, was highly respected by her supervisors, was fully capable of performing the duties connected with her job and was, in fact, capably performing those duties and physically and mentally able to perform her duties as of the date of her termination.

Effective May 21, 1971, the Legislature of the State of Nebraska adopted a Civil Service System Act which provided for the establishment of a Civil Service Commission in any Nebraska County having a population of 300,000 inhabitants or more (Sections 23–2501–23–2516, inclusive, R.R.S.Neb.1943, 1972 Cum.Supp.). The stated legislative purpose of the Civil Service System Act was to guarantee to all citizens a fair and equal opportunity for employment in the County offices governed by the Act, to establish conditions of employment, and to promote economy and efficiency in such offices. Excluded specifically by the terms of the Civil Service Act were part-time employees, employees subject to the State Personnel Office Act, court-appointed employees, employees of the County Attorney's office, or dentists, physicians, practicing attorneys, deputy sheriffs, officers appointed by the Governor, elected officers or the chief deputy of each office or the deputy of each office if there is not more than one deputy in the office. A part-time employee was defined as any person whose position was seasonal or temporary as defined by the Commission.

Among other things, the Civil Service Act allowed the formation of a Civil Service Commission established pursuant to the act to prescribe, through its commissioners, general employment policies and procedures and regulations governing such matters as hours of work, promotions, transfers, demotions, probation, termination and reduction in force (See Section 23–2507, R.R.S.Neb. *supra*).

Thereafter, pursuant to the Civil Service Act, Douglas County established a Civil Service Commission which was subsequent to the time that the plaintiff was initially employed by Douglas County. The commissioners of the Douglas County Civil Service Commission, supra, adopted and promulgated written statements of policy and regulations governing Douglas County employment and Douglas County employees who were covered by the Civil Service Act, which statements of policy and regulations provided, among other things, that:

(a) Effective January 1, 1972, Douglas County shall adopt a mandatory retirement at age 65 for all employees covered under Legislative Bill 921. However, in the interest of acclimating those employees presently on the payroll to this retirement policy, and

in order to effect an orderly transition to the retirement program, the following schedule shall apply

| Employees Born On Or Before | To Retire No Later Than |
| --- | --- |
| 12–31–03 | 12–31–72 |
| 12–31–05 | 12–31–73 |
| 12–31–07 | 12–31–74 |
| 12–31–09 | 12–31–75 |
| 12–31–11 | 12–31–76 |

Thereafter at age 65

(b) Employees subject to the above schedule, who are older than age 65 may choose to retire prior to their scheduled retirement date, but no employee covered under Legislative Bill 921 may work past the appropriate compulsory retirement date

Douglas County Personnel Policy Manual, Art. XIII, page 1

The foregoing statements of policy and regulations were in effect at all times material hereto and continued to remain in effect as of the date hereof.

Further, the written regulations provided for protection and fair treatment for Douglas County employees in all aspects of personnel administration in connection with their political affiliation, race, color, national origin, sex or creed. Further, the written regulations provided in substance that an employee of Douglas County could not be discharged, suspended, placed on probation or demoted in rank or compensation without the filing of a written order by the employee's department head specifically stating and setting out the reasons for the same and provided and set up the machinery for the employee's appeal from such an order and a subsequent public hearing thereon before the Douglas County Civil Service Commission. In other words, employees covered by the Civil Service Act are protected from any frivolous or discriminatory discharge, suspension or demotion and are assured fair treatment regardless of their political affiliation, race, color, national origin, sex or creed (see Civil Service Commission, Douglas County

Personnel Policy Manual, General Policy, Article I(e), (f), Article III, Article XIX, Section 1, Section 2). Neither the Civil Service Act nor the regulations of the Douglas County Civil Service Commission apply to part-time, seasonal or temporary employees, and both sides agree that the age of a part-time employee would not require mandatory termination (retirement) and that such an employee could continue working for Douglas County at any age if such an arrangement was mutually agreeable with the employee and the County. This, of course, would include plaintiff.

As stated above, and in essence, the plaintiff has challenged the Act and the written statements and regulations promulgated thereunder on the grounds that her rights under the Fourteenth Amendment of the Constitution are violated and abridged, this for the reasons that plaintiff's classification which requires mandatory retirement at age sixty-nine (for her) has no reasonable basis to the purposes of promotion of economy and efficiency and regulation of County employment and that her classification is irrational and arbitrary. Further, for the reason that all Douglas County employees are not covered by the Act and the rules and regulations promulgated thereunder and that some employees are specifically excluded. And, finally, plaintiff claims to be the victim of an irrebuttable presumption of unfitness to work and has been given no opportunity for a fitness hearing which might result in her continued employment. This Court cannot agree with plaintiff's contentions.

Basically, plaintiff's argument and contentions appear to rest on the assumption that age is a factor subject to constitutional protection and that age classifications, as such, are subject to Fourteenth Amendment scrutiny. However, and to the contrary, there appears to be no question but what age is a classification which bears a reasonable relation to the law in question and that age has an inevitable and definite relationship with the ability to perform work.

Indeed, many employers, public and private, have traditionally adopted policies including mandatory retirement for reasons of good business and management, and it is not the function or the prerogative of this Court to substitute its judgment for that of a duly and legally constituted Civil Service Commission providing, of course, that the judgment of the latter conforms with the Constitution of the United States.

In Weiss v. Reverend Michael Walsh, S.J. (Fordham University), 324 F.Supp. 75 (S.D.N.Y.1971), aff'd, 461 F.2d 846 (2d Cir.), cert. denied, 409 U.S. 1129, 93 S.Ct. 939, 35 L.Ed.2d 262 (1973), the same basic question was presented as is presented here. Fordham University offered plaintiff, a metaphysician of renown, the Albert Schweitzer Chair in Humanities and subsequently withdrew the offer on the sole ground that plaintiff had passed his sixty-fifth year. In that case, as in the instant case, the plaintiff sought both injunctive and monetary relief and asserted, among other things, that defendant had violated the plaintiff's rights under the Fourteenth Amendment of the United States Constitution. Plaintiff alleged, and the evidence appeared abundantly clear, that he was preeminently qualified to fill the Schweitzer Chair and that his prognosis for length and breadth of productivity was excellent, but notwithstanding, the Schweitzer Chair offer was withdrawn because of the arbitrary age limit in question.

In *Weiss,* concerning plaintiff's Fourteenth Amendment argument, the Court in a well-considered opinion stated at page 77 of 324 F.Supp. in language which is most appropriate and applicable in the instant case as follows:

> Secondly, the absence of specific reference to age in the Fourteenth Amendment does not alone insulate age classifications from constitutional scrutiny any more than does the absence of mention of poverty or residency for example. Harper v. Virginia State Board of Education, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968). But being a classification that cuts fully across racial, religious, and economic lines and one that generally bears some relation to mental and physical capacity, age is less likely to be an invidious distinction. Even where the Equal Protection Clause is buttressed by the Sixth Amendment's cross-sectional principle respecting jury selection, the Constitution tolerates some variation in eligibility at the ends of the age spectrum. Cf. Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), United States ex rel. Epton v. Nenna, Warden, D.C., 281 F.Supp. 388 (1970). Nor is there a constitutionally mandated minimum age for voting in state and local elections. Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). Even assuming that equivalent importance is accorded to employment opportunity in our constitutional scheme, and given the protection afforded such opportunity by the Due Process and Equal Protection Clauses, I am constrained to hold that Professor Weiss is not the victim of an invidious and impermissible discrimination. Notwithstanding great advances in gerontology, the era when advanced age ceases to bear some reasonable statistical relationship to diminished capacity or longevity is still future. It cannot be said, therefore, that age ceilings upon eligibility for employment are inherently suspect, although their application will inevitably fall injustly in the individual case. If the precision of the law is impugnable by the stricture of general applicability, vindication of the exceptional individual may have to attend the wise discretion of the administrator. On its face, therefore, the denial of a teaching position to a man approaching seventy years of age is not constitutionally infirm.
>
> . . .

See also Retail Clerks Union Local 770 v. Retail Clerks International Association, 359 F.Supp. 1285 (C.D.Cal.1973),

wherein the Court held that age classifications of persons of advanced years are not constitutionally or statutorily infirm; American Airlines v. State Commission for Human Rights, 29 A.D.2d 178, 286 N.Y.S.2d 493 (1968), wherein it was held and determined that age is not a factor within the purview of constitutional protection as did the Court in Fabio v. City of St. Paul, 267 Minn. 273, 126 N.W.2d 259 (1964).

■ We now move to plaintiff's contention that the defendants' classification by age for retirement does not reasonably and rationally relate to the purposes of the Civil Service Act and to the written rules and regulations adopted by the Douglas County Civil Service Commission and further, the classification in question is irrational and arbitrary and, therefore, must be struck down, because all Douglas County employees are not included in or covered by the Act. Not all discrimination between classes of persons is violative of the law, the test being whether any distinctions which are drawn are rationally related to the purposes for drawing or making the distinctions. In the instant case, this Court is of the opinion that the mandatory retirement provisions in question achieve a permissible and logical end, and further, that the means chosen are reasonable and rational. The stated purpose of the Act was to guarantee to all citizens a fair and equal opportunity for employment in the County offices governed by the Act and to establish conditions of employment and to promote economy and efficiency in such offices. Further, the stated general policy of the Douglas County Civil Service Commission, in implementing the Civil Service Act, sets forth, in detail, permissible objectives which are clearly supported by the evidence.

In Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, at pages 78–79, 31 S. Ct. 337, at p. 340, 55 L.Ed. 369 (1911), the rules by which the subject of equal protection must be tested are stated:

1. The equal-protection clause of the 14th Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. (Citations omitted.)

In Rast v. Van Deman & Lewis Co., 240 U.S. 342, 357, 36 S.Ct. 370, 374, 60 L.Ed. 679 (1916), it is stated:

(A) distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed.

The Court notes the following language in New York Rapid Transit Corp. v. City of New York, 303 U.S. 573 at 578, 58 S.Ct. 721, at 724, 82 L.Ed. 1024 (1938):

No question is or could be made by the corporation as to the right of a state, or a municipality with properly delegated powers, to enact laws or ordinances, based on reasonable classification of the objects of the legislation or of the persons whom it affects. "Equal protection" does not prohibit this. Although the wide discretion as to classification retained by a legislature often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification. (Citations omitted.) Indeed, it has long been the law under the four-

teenth amendment that "a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, . . . (Citations omitted).

In Schilb v. Kuebel, 404 U.S. 357 at 364, 92 S.Ct. 479, at 484, 30 L.Ed.2d 502 (1971), is found:

"Legislatures are presumed to have acted constitutionally . . . and their statutory classifications will be set aside only if no grounds can be conceived to justify them. . . ." quoting from McDonald v. Board of Election Commissioners, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

■ It is clear that the law affords a presumption of constitutionality insofar as legislative acts are concerned where the basis for passage is reasonable and if any state of facts, within reason, can be conceived which would sustain the enactment. Further, it is clear that one who assails the classification in such an enactment has the burden of showing that the classification does not rest upon any reasonable basis and is essentially arbitrary. Here, the Court finds that the classification in question bears a distinct, definite and reasonable relation to the purpose of the law and that plaintiff's classification is neither arbitrary nor capricious. The Court further finds that there is no evidence which would indicate that all persons similarly circumstanced as plaintiff will not be treated alike.

■ Nor is there legal merit in plaintiff's assertion that her right to engage in a common occupation, fundamental to liberty, has been abridged. This same argument that public employees have a vested interest in their jobs which would, in effect, prohibit their mandatory retirement at age sixty-five was advanced in the Supreme Court of the State of Nebraska in Gossman v. State Employees Retirement System, 177 Neb. 326, 129 N.W.2d 97 (1964). *Gossman* presented a situation not unlike the instant case and in a well-reasoned and carefully considered opinion, Chief Justice White stated at page 103 at 129 N. W.2d:

The State, in this case, is in the position of an employer. It is in the position of setting up the terms and conditions under which the State will contract for employment and under which an employee may or may not, according to his wishes, accept the proffered conditions. All that is required is that the classifications and the requirements thereunder must have some reasonable relation to the purposes and objectives of the Act. The purposes and objectives of the Act in this situation are to set up conditions and requirements of employment which the employee is free to accept or reject. In evaluating this situation, we take notice of the fact that the State is an employer on the labor market and must meet, and is subjected to, the competitive influences and pressures that are present under modern economic conditions. In the light of this situation, it is reasonable for it to hold out and to set up inducements to employees in a retirement act. The purposes and objectives of a retirement act are manifold. The Legislature may from time to time have to change the conditions to meet new needs and purposes appearing in the economic scene. The necessity to furnish what is commonly known as "fringe benefits" in this area in order to secure and keep good employees is manifest under modern conditions. We must evaluate the Act in the light of the employment policy purposes sought to be accomplished. It seems clear to us that the State may make, as a condition of its employment, any sort of a reasonable provision that relates to the manifold objectives and purposes of such an Act. The maintenance of morale, inducement to younger employees to remain, inducement for the older ones to quit when their skills have diminished, special inducements for different high-quality types of employment, and a regard for the

necessity to meet competitive provisions in other retirement acts, all are proper objectives. The Legislature has a right to define and determine what conditions or objectives are reasonable in this area. It is clear that State employment is not a vested right, but it is extended at the will of the State, and the State may reasonably make a mandatory retirement system as a condition of such employment, and if this be so, it follows that the State has a right to impose such conditions as are economically and practicably sound. And, in responding to such imposed conditions, the employees have the alternative of accepting such conditions and complying with the conditions that are found in the Act or finding work elsewhere.

 Finally, plaintiff asserts that defendants, in terminating employment because of the mandatory age provision, have applied an irrebuttable presumption of unfitness to work insofar as plaintiff is concerned, and in the absence of an opportunity for a fitness hearing have denied plaintiff due process and equal protection of law. Again, there is no legal merit to this argument. It is only where a possible collision with a constitutionally protected right or privilege is involved that there should be extended the right of a termination hearing. Here, the Court finds no such possible collision exists. The Court of Appeals for the Eighth Circuit carefully stated the rule in Freeman v. Gould Special School District of Lincoln County, Arkansas, 405 F.2d 1153, 1159 (8th Cir. 1969):

> We agree that the teachers are protected under the Equal Protection Clause from discrimination on account of race or religion or in their assertion of constitutionally protected rights, but no case cited by plaintiffs has gone so far as to say that all actions of any governmental board or agency in employment cases must accord the individual due process under the Fourteenth Amendment so as to

provide tenure and a right to retain the position, except for cause. And "for cause" presupposes a right to hearing, notice, and appeal. Many government employees are under civil service and some under tenure. Absent these security provisions a public employee has no right to continued public employment, except insofar as he may not be dismissed or failed to be rehired for impermissible constitutional reasons, such as race, religion or the assertion of rights guaranteed by law or the Constitution.

See also Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In conclusion, it is the finding of this Court that the mandatory retirement provision adopted by the Douglas County Civil Service Commission, implementing the state Civil Service Act in question, reflects a permissible means of accomplishing a rational and reasonable objective. It is the Court's finding that the classification in question is in all respects reasonable and that it has a proper and valid relationship to the legitimate purposes and objectives of the Act, which is to set up an employee retirement system in furtherance of the legitimate power and, indeed, the duty of the State and Douglas County to provide reasonable control and reasonable management of the conditions and standards of public employment. There is no doubt, and understandably so, that considerable empathy exists here for the plaintiff from her immediate job supervisors. However, as stated in *Weiss, supra,* "the Court is called upon to judge neither the brilliance nor worthiness of a man, but the merit of his legal claims."

Accordingly, by separate order of this Court, entered this day, plaintiff's motion for summary judgment is denied and defendants' cross motion for summary judgment is granted. Plaintiff's complaint is dismissed.