531 P.2d 199

**Elizabeth M. LEWIS, Appellant,**

v.

**TUCSON SCHOOL DISTRICT NO. I, Appellee.**

**No. 2 CA–CIV 1698.**

Court of Appeals of Arizona, Division 2.

Jan. 29, 1975.

Rehearing Denied March 4, 1975.

Review Denied April 8, 1975.

Miller, Pitt & Feldman, P.C. by Jeffrey H. Schwartz and Stanley G. Feldman, Tucson, for appellant.

DeConcini, McDonald & Brammer, P.C. by J. Wm. Brammer, Jr., Tucson, for appellee.

## OPINION

KRUCKER, Judge.

The subject of this appeal is the constitutionality of A.R.S. § 15–1471, which provides:

"Any teacher in active service who becomes a member of the state employees' retirement system pursuant to the provisions of this article, shall be retired for service at the end of the school year following the date on which he attains the age of sixty-five, unless his employer approves and forwards annually to the state employees' retirement system board his application to be retained in his employment on a year to year basis. Teacher members in service shall be retired at the end of the school year following the date on which they attain the age of seventy, whether or not they apply to be retained."

Appellant, a continuing teacher at Townsend Junior High School, Tucson, for 16 successive years, applied to the School Board for renewal of her employment contract in the school year in which she attained the age of 65. Her application was summarily denied and on June 6, 1973, she filed a special action challenging the Board's failure to approve her application; also, that the Board's policy of refusing employment to teachers who reach the age of 65 is unconstitutional.

The lower court directed the School Board to consider appellant's application on its merits, and on November 5, 1973, an informal hearing was held by the Board with appellant and her attorney. It is undisputed that appellant presented evidence to the Board to demonstrate her physical and mental fitness to continue teaching. Enumeration of the evidentiary details is unnecessary—suffice it to say that appellant's reputation in the teaching community was excellent. Her request for retention was accompanied by a letter from the principal of Townsend Junior High School in which he stated:

"I consider Mrs. Elizabeth Lewis one of the finest teachers one could find anywhere. She is a truly professional teacher, and I highly recommend her request be granted."

The Board, however, on December 18, 1973, denied appellant's application, stating as its reasons:

"If termination of the service of an employee would prove injurious to students, or if the employee would be·diffi-

cult to replace, the Board of Education would be inclined to approve his request to continue employment. Since neither of these problems exist 'in this instance, due to the availability of many fine replacements in Mrs. Lewis' field of teaching, and since she could be and was replaced by a very able teacher, the Board of Education does not approve her request to continue."

The trial court ruled that A.R.S. § 15–1471 did not constitute invidious discrimination on the basis of age in violation of the equal protection clause and therefore rejected appellant's claim that it was unconstitutional.

The major premise upon which appellant's constitutional claim is predicated is the fact that A.R.S. § 38–759 prescribes age seventy as the mandatory retirement age for public officers and employees [1] and that employees under the control of the Board of Regents may continue beyond such age in the Board's discretion. Thus, appellant argues, college professors may teach until age seventy (and even beyond such age at the discretion of the Board of Regents) whereas elementary and secondary school teachers must retire at age 65 (unless the School Board exercises its discretion to continue employment to age seventy).

Appellant concedes that age ceilings for public employment are not per se violative of the equal protection clause. Weiss v. Walsh, 324 F.Supp. 75 (D.C.N.Y.1971), cert. den., 409 U.S. 1129, 93 S.Ct. 939, 35 L.Ed.2d 262 (1973), reh. den., 410 U.S. 970, 93 S.Ct. 1439, 35 L.Ed.2d 706 (1973). She argues, however, that maintenance of one retirement age for elementary and secondary school teachers and another retirement age for all other government employees, including teachers at the college level, is a classification without rational basis and therefore violative of the equal protection clause of the 14th Amendment.

We recognize that "the compelling state interest" test has been held applicable in cases involving suspect classifications. E. g., Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L. Ed.2d 52 (1974); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to travel); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (legitimacy); Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (race).

We have been cited to no cases, nor has our independent research disclosed any, holding that age is a suspect classification. To the contrary, other courts have uniformly upheld mandatory retirement statutes. See, e. g., Fabio v. City of St. Paul, 267 Minn. 273, 126 N.W.2d 259 (1964); Armstrong v. Howell, 371 F.Supp. 48 (D. C.Neb.1974); Weiss v. Walsh, supra; McIlvanie v. Pennsylvania State Police, 6 Pa.Cmwlth. 505, 296 A.2d 630 (1972); Nelson v. Miller, 25 Utah 2d 277, 480 P.2d 467 (1971); Aronstam v. Cashman, 325 A. 2d 361 (Vt.1974).

In *Weiss,* supra, Fordham University offered the plaintiff, a metaphysician of renown, the Albert Schweitzer Chair in Humanities and subsequently withdrew the offer on the sole ground that he had passed his sixty-fifth year. The plaintiff sought both injunctive and monetary relief and asserted, *inter alia,* that the University had violated his rights under the 14th Amendment. The plaintiff alleged, and the evidence was clear, that he was pre-eminently qualified to fill the Schweitzer Chair and that notwithstanding his prognosis for length and breadth of productivity was excellent, the University withdrew the offer

---

1. A.R.S. § 38–759 was amended in 1974, effective July 1, 1975, and provides for mandatory retirement at age 65 except as provided in A.R.S. § 38–759.01. The latter statute permits continuation of employment beyond age 65 if the officer or employee timely requests continuation of employment, if such officer or employee is certified by his appointing authority as "specially fitted by reason of experience and training to perform the duties of his position", the appointing authority approves the request, and such request is approved by the personnel board.

because of an arbitrary age limit. The court responded to the 14th Amendment argument:

"Secondly, the absence of specific reference to age in the Fourteenth Amendment does not alone insulate age classifications from constitutional scrutiny any more than does the absence of mention of poverty or residency for example. [Citations omitted] But being a classification that cuts fully across racial, religious, and economic lines, and one that generally bears some relation to mental and physical capacity, age is less likely to be an invidious distinction. Even where the Equal Protection Clause is buttressed by the Sixth Amendment's cross-sectional principle respecting jury selection, the Constitution tolerates some variation in eligibility at the ends of the age spectrum. [Citations omitted] Nor is there a constitutionally mandated minimum age for voting in state and local elections. Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). Even assuming that equivalent importance is accorded to employment opportunity in our constitutional scheme, and given the protection afforded such opportunity by the Due Process and Equal Protection Clauses, I am constrained to hold that Professor Weiss is not the victim of an invidious and impermissible discrimination. Notwithstanding great advances in .gerontology, the era when advanced age ceases to bear some reasonable statistical relationship to diminished capacity or longevity is still future. It cannot be said, therefore, that age ceilings upon eligibility for employment are inherently suspect, although their application will inevitably fall injustly in the individual case. If the precision of the law is impugnable by the stricture of general applicability, vindication of the exceptional individual may have to attend the wise discretion of the administrator. On its face, therefore, the denial of a teaching position to a man approaching seventy years of age is not constitutionally infirm." 324 F.Supp. at 77.

In Fabio v. City of St. Paul, supra, the court held that a statutory classification which required the plaintiff, as an employee on the police payroll, to retire at age 65 was not unconstitutional even though other employees were permitted to change from the police payroll to other payrolls within the department and to continue to serve in more sedentary positions after retirement age. In *McIlvanie,* supra, the court held that a statute providing for mandatory retirement of state policemen at age 60 was not unreasonable and discriminatory in excepting other police officers of a certain rank and assignment from its operation. In response to the plaintiff's contention that a mandatory retirement age for state police officers as a class was not a bona fide occupational qualification, the court stated:

"The fact that a particular police officer is physically fit and able to perform his duties or that minds may differ upon the particular mandatory retirement age selected by the legislature is not proof of want of bona fides as to the qualification otherwise applied uniformly and non-discriminatorily to the selected class." 296 A.2d at 63.

In Aronstam v. Cashman, supra, two assistant judges, both over 70 years of age, attacked the mandatory retirement age of 70 for assistant judges. They maintained that this classification based upon age was one involving a suspect criterion and affected a fundamental right, claiming that only promotion of a compelling state interest would justify it. The appellate court pointed out that the threshold inquiry was two-pronged: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger? It held that there was a legitimate state interest in requiring for members of the judiciary the highest possible standards obtainable by minimizing as far as possible the threat of an obviously disabled judge continuing to

preside. Also, no violation of any recognized fundamental personal right had been demonstrated. It therefore concluded that the mandatory retirement age passed constitutional muster.

In Armstrong v. Howell, supra, a mandatory retirement provision which did not cover *all* county employees was attacked on due process and equal protection grounds. The plaintiff contended that her classification, which required mandatory retirement at age 69, had no reasonable basis and was irrational and arbitrary. An additional equal protection argument was that some county employees were not covered and some were specifically excluded. She also claimed to be the victim of an irrebuttable presumption of unfitness to work. The federal court made the following response to the plaintiff's argument that age is a factor subject to constitutional protection and that age classifications, as such, are subject to 14th Amendment scrutiny:

"However, and to the contrary, there appears to be no question but what age is a classification which bears a reasonable relation to the law in question and that age has an inevitable and definite relationship with the ability to perform work. Indeed, many employers, public and private, have traditionally adopted policies including mandatory retirement for reasons of good business and management, and it is not the function or the prerogative of this Court to substitute its judgment for that of a duly and legally constituted Civil Service Commission providing, of course, that the judgment of the latter conforms with the Constitution of the United States." 371 F.Supp. at 51–52.

The court found that the mandatory retirement provision reflected a permissible means of accomplishing a rational and reasonable objective which was to set up an employee retirement system in furtherance of legitimate power and duty of the state to provide reasonable control and reasonable management of the conditions and standards of public employment. The court also rejected the plaintiff's assertion that her right to engage in a common occupation fundamental to liberty, had been abridged. Quoting from Gossman v. State Employees Retirement System, 177 Neb. 326, 129 N.W.2d 97 (1964), the court rejected a "vested interest" argument:

"The State, in this case, is in the position of an employer. It is in the position of setting up the terms and conditions under which the State will contract for employment and under which an employee may or may not, according to his wishes, accept the proffered conditions. All that is required is that the classifications and the requirements thereunder must have some reasonable relation to the purposes and objectives of the Act. The purposes and objectives of the Act in this situation are to set up conditions and requirements of employment which the employee is free to accept or reject. In evaluating this situation, we take notice of the fact that the State is an employer on the labor market and must meet, and is subjected to, the competitive influences and pressures that are present under modern economic conditions. In the light of this situation, it is reasonable for it to hold out and to set up inducements to employees in a retirement act. The purposes and objectives of a retirement act are manifold. The Legislature may from time to time have to change the conditions to meet new needs and purposes appearing in the economic scheme. The necessity to furnish what is commonly known as 'fringe benefits' in this area in order to secure and keep good employees is manifest under modern conditions. We must evaluate the Act in the light of the employment policy purposes sought to be accomplished. It seems clear to us that the State may make, as a condition of its employment, any sort of a reasonable provision that relates to the manifold objectives and purposes of such an Act. The maintenance of morale, inducement to younger employees to remain, inducement for the older ones to quit when their skills have diminished, special inducements for dif-

ferent high-quality types of employment, and a regard for the necessity to meet competitive provisions in other retirement acts, all are proper objectives. The Legislature has a right to define and determine what conditions or objectives are reasonable in this area. It is clear that State employment is not a vested right, but it is extended at the will of the State, and the State may reasonably make a mandatory retirement system as a condition of such employment, and if this be so, it follows that the State has a right to impose such conditions as are economically and practicably sound. And, in responding to such imposed conditions, the employees have the alternative of accepting such conditions and complying with the conditions that are found in the Act or finding work elsewhere." 371 F.Supp. at 54–55.

We believe this rationale applies equally here. The fact that the Legislature made a distinction between the retirement age for primary and secondary school teachers and the retirement age for other state employees, including college teachers, is not an irrational distinction. The Legislature apparently concluded that after age 65 a teacher's ability to manage and control large groups of young people would be lessened and concomitantly be an undue strain upon the teacher. While in individual cases this might not be so, we cannot say that the Legislature's recognition of the aging process by adoption of age 65 was arbitrary and unrelated to a legitimate state interest, i. e., education.

While the decision to retain a teacher beyond the age of 65 has been committed to the discretion of the School Board, this discretion cannot be exercised maliciously, arbitrarily or discriminatorily. Cf., Dick v. Cahoon, 84 Ariz. 199, 325 P.2d 835 (1958). We are unable to find an abuse of such discretion.

The lower court's denial of relief to appellant was proper and we affirm.

HOWARD, C. J., and HATHAWAY, J., concur.