[Civ. No. 47475. Second Dist., Div. Two. Nov. 16, 1976.]

AMERICAN FEDERATION OF TEACHERS COLLEGE GUILD, LOCAL 1521 et al., Plaintiffs and Appellants, v. BOARD OF TRUSTEES OF THE LOS ANGELES COMMUNITY COLLEGE DISTRICT et al., Defendants and Respondents.

## COUNSEL

Levy, Koszdin & Woods and Harry R. Fenton for Plaintiffs and Appellants.

John H. Larson, County Counsel, Steven J. Carnevale, Deputy County Counsel, and Larry J. Frierson for Defendants and Respondents.

## OPINION

**ROTH, P. J.**—The facts are undisputed. Petitioner, American Federation of Teachers College Guild, Local 1521 ("Union"), sought a writ of mandate requiring respondent Los Angeles Community College District Board of Trustees ("Board") to retain certified teachers until the age of 67 and thereafter unless, after reaching such an age, it is determined that the teacher is "physically or mentally incapable" of carrying out his or her teaching duties.

· The petition also sought the reinstatement of all teachers who were involuntarily retired by the Board at age 65 pursuant to Board rule 1960 which states: "An employee shall not be retained in service beyond the close of the school year in which he attains the 65th anniversary of his date of birth."

Each of the two teachers on whose behalf[1] this proceeding is maintained had attained the age of 65 during the school year ending in June 1974. Each was and is in good health, competent, and well qualified, but was forced to retire in June 1974 because of rule 1960.

Union contends that: the mandatory retirement rule employed by Board violates the due process and equal protection clause of the Constitution; Board should be required to show a compelling state interest justifying the adoption of the mandatory retirement age of 65: and that the difference in the mandatory retirement age between teachers employed by the California State Universities and Colleges (67) and those of the Board (65) serves no rational purpose.

These issues have recently been disposed of on identical facts in *Townsend* v. *County of Los Angeles* (1975) 49 Cal.App.3d 263 [122 Cal.Rptr. 500], a decision authored by Presiding Justice Kaus of Division Five of this court. In *Townsend* a deputy public defender was involuntarily retired at, and by virtue of, his age of 65 years. *Townsend* answers Union's principal contention as follows:

"We find nothing arbitrary, discriminatory or unreasonable in establishing maximum retirement ages. Plaintiff's assertions of arbitrariness

---

[1]The parties stipulated that this action was brought by a labor organization in its representative capacity on behalf of its members and that it was therefore exempt from the normal class action rules.

assume that the sole issue in determining the validity of mandatory retirement ages is the job effectiveness and protection of current jobholders. Rather, however, mandatory retirement increases the opportunity for all qualified persons to share in public employment and permits governmental units to plan for orderly attrition through lower retirement ages, or orderly growth through higher retirement ages.

"The purposes of a mandatory retirement age in a public employment system were well stated in *Armstrong* v. *Howell* (D.Neb. 1974) 371 F.Supp. 48, in which case, as here, the county adopted a mandatory 65-year-old retirement age after the plaintiff had been employed by the county. The court, in declining to strike down the system as irrational and arbitrary, ruled: 'Not all discrimination between classes of persons is violative of the law, the test being whether any distinctions which are drawn are rationally related to the purposes for drawing or making the distinctions. In the instant case, this Court is of the opinion that the mandatory retirement provisions in question achieve a permissible and logical end, and further, that the means chosen are reasonable and rational. The stated purpose of the Act was to guarantee to all citizens a fair and equal opportunity for employment in the County offices governed by the Act and to establish conditions of employment and to promote economy and efficiency in such offices.' (371 F.Supp. at p. 53.)

"Moreover, constitutional issues aside, a mandatory retirement age of 65 years is consistent with federal and state employment legislation. Thus, under federal law, 29 United States Code, section 623, prohibits an employer from discriminating against a prospective or present employee because of that person's age, but section 631 limits the prohibition to persons 'who are at least forty years of age but less than sixty-five years of age.' The federal legislation is complemented by California law. Labor Code, section 1420.1 provides that it is an unlawful employment practice for an employer to fire or refuse to hire 'any individual between the ages of 40 and 64 solely on the ground of age, . . .'

"Finally, federal courts and sister jurisdictions have, over a period of years, held in a variety of contexts that an age restriction, consistent with law, is not unreasonable. (E.g., *Armstrong* v. *Howell, supra,* 371 F.Supp. 48, 53; *Retail Clerks U., Local 770* v. *Retail Clerks Int. Ass'n.* (C.D.Cal. 1973) 359 F.Supp. 1285, 1287-1288; *Weiss* v. *Walsh* (S.D.N.Y. 1971) 324 F.Supp. 75, 77, affd. 461 F.2d 846, cert. den., 409 U.S. 1129 . . . ; *Gossman*

v. *State Employees Retirement System* (1964) 177 Neb. 326 . . . ; *Campbell* v. *Aldrich* (1938) 159 Ore. 208 . . . ; *McIlvaine* v. *Pennsylvania State Police* (1972) 6 Pa.Cmwlth. 505 . . . , affd. (1973) 454 Pa. 129 . . . , app. dism., 415 U.S. 986 . . . ; *Browning* v. *City of Seattle* (1957) 50 Wn.2d 813 . . . .)" (*Supra,* at pp. 268-269.)

■ With respect to Union's claim that there is no rational basis warranting the distinction between retirement ages of 67 and 65, *Townsend* holds: "Plaintiff's contention is, again, pegged to a misapprehension about the purposes of mandatory retirement. Conceding that persons performing comparable work are not less qualified in one county at age 65 than such persons are in another county at age 70, mandatory retirement ages also reflect the interests of prospective employees and the needs of governmental units." (*Townsend* v. *County of Los Angeles, supra,* 49 Cal.App.3d at p. 270.)

Board's brief calls attention to an additional pragmatic reason justifying the distinction which we quote in full: "Apparently, the Legislature while recognizing the existence of some overlap between the functions performed by state colleges and universities and community colleges, also recognizes the essential differences between these academic institutions. Perhaps the Legislature in enacting different rules governing these institutions recognized such factors as the greater academic degree and professional achievement requirements faced by state college and university professors as compared to community college teachers, thus resulting in a smaller group of persons eligible to teach in state colleges and universities than in community colleges. Perhaps the Legislature recognized that state colleges and universities primarily are engaged in education beyond the first two years of college thus making the function of such institutions more dissimilar than similar in operation to community colleges. The foregoing makes it abundantly clear that there is definitely a rational basis for treating the two groups in question differently, and this rational basis extends to the existence of the slightly different mandatory retirement ages which do exist. Consequently, the provision here in question does not violate the equal protection clause of the United States Constitution or parallel provisions in the California Constitution."

It is apparent that the difference in the mandatory retirement age between junior college and university teachers can well be explained by

the differing nature and scope of their duties. We find that the distinction made by the state agencies is rationally related to, and based on, the essential differences between these academic institutions. (*Massachusetts Board of Retirement* v. *Murgia* (1976) 427 U.S. 307 [49 L.Ed.2d 520, 96 S.Ct. 2562].)

*Nelson* v. *Miwa* (1976) 56 Hawaii 601 [546 P.2d 1005], decided by the Supreme Court of Hawaii and cited by Union, does not by its own terms apply to this case. In *Nelson,* the Chancellor of the University of Hawaii exercised discretion vested in him by statute in deciding to retire a university professor at the age of 65 even though his colleagues found the professor, by secret ballot, more qualified than any of the 45 applicants for his job. The Hawaii statute was not applied uniformly to all teachers reaching the age of 65; some were retired because of age and others were not. That is obviously not the case here and, as noted by the court in *Nelson* v. *Miwa, supra,* 546 P.2d 1005, 1012, " . . . decisions upholding the constitutionality of a uniformly applied mandatory retirement age with no provision for individual evaluation are not controlling. *See, e.g., Weiss* v. *Walsh,* 324 F.Supp. 75 (S.D.N.Y. 1971), *aff'd mem.* 461 F.2d 846 (2d Cir. 1972), *cert. denied,* 409 U.S. 1129, 93 S.Ct. 939, 35 L.Ed.2d 262 (1973), *rehearing denied,* 410 U.S. 970, 93 S.Ct. 1439, 35 L.Ed.2d 706 (1973); *Armstrong* v. *Howell* [371 F.Supp. 48, 51 (D.Neb. 1974)], *supra*; *McIlvaine* v. *Pennsylvania State Police,* 6 Pa.Cmwlth., 505, 296 A.2d 630 (1972), *aff'd,* 454 Pa. 129, 309 A.2d 801 (1973), *appeal dismissed,* 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974); *Weisbrod* v. *Lynn,* 383 F.Supp. 933 (D.C.D.C. 1974), *aff'd summarily,* 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 (1975) [footnote omitted]; *Rubino* v. *Ghezzi,* 512 F.2d 431 (2d Cir. 1975), *petition for cert. filed,* 44 USLW 3012 (1975); *Lewis* v. *Tucson School District No. 1,* 23 Ariz.App. 154, 531 P.2d 199 (1975); *Townsend* v. *County of Los Angeles, supra.*"

The judgment is affirmed.

Compton, J., and Beach, J., concurred.