487 F.Supp. 960 (1980)
Stanley G. MITTELSTAEDT
v.
The BOARD OF TRUSTEES OF the UNIVERSITY OF ARKANSAS and Hall McAdams III, Hugh B. Chalmers, Jacquelin Douglas, Bradley D. Jesson, Charles E. Kemp, Raymond P. Miller, Sr., Diane Nolan, Robert D. Pugh, Louis L. Ramsay, Jr., and Jack Williams, in their capacity as Members of the Board; and Charles E. Bishop, President of the University of Arkansas; and Harry Ward, Chancellor of the University of Arkansas for Medical Sciences.
No. LR-C-77-183.
United States District Court, E. D. Arkansas, W. D.
March 6, 1980.
*961 *962 Herbert C. Rule, III, Rose, Nash, Williamson, Carroll, Clay & Giroir, Little Rock, Ark., for plaintiff.
Ray Trammell, Gen. Counsel, U. of A., Fayetteville, Ark., for defendants.

MEMORANDUM OPINION
ROY, District Judge.
Plaintiff Stanley G. Mittelstaedt, a citizen and resident of Pulaski County, Arkansas, was first employed by the Board of Trustees as a member of the faculty of the University of Arkansas in its School (now College) of Pharmacy in 1951. For a number of years prior to June 30, 1977 he held the rank of Professor, with tenure, which entitled him to successive annual employment appointments. Plaintiff, in addition to holding the academic rank of Professor, served as Dean of the School of Pharmacy for a number of years. The position of Dean is an administrative position to which tenure is not applicable. In anticipation of the fact that plaintiff would reach age 67 during the year ending June 30, 1977, a search for a new Dean was begun by the University. Larry Milne was employed in that position in December 1976 with the faculty rank of Professor. Plaintiff was, at that time, reassigned to a faculty position of Professor. The last such appointment he received was for the annual period ending June 30, 1977.
After plaintiff's replacement as Dean, on March 30, 1977 he wrote the Chancellor stating that the matter of the Deanship was not an issue with him, but that he desired continued employment as a full-time Professor.
As indicated by an exchange of correspondence with the Chancellor for the UAMS campus, plaintiff was aware of the retirement age as established by the university policy well in advance of the retirement date.
*963 The retirement policy permitted employment, under limited circumstances, of those who had reached age 67, at the discretion of the employer and for not to exceed one year at a time but in no event past age 70. Plaintiff sought employment under this discretionary provision, but was not hired.
Plaintiff then filed this cause as a class action against the Board of Trustees of the University; the ten members of the Board in their capacities as members of the Board; Charles E. Bishop, President of the University; and Harry Ward, Chancellor of the University of Arkansas for Medical Sciences, the campus of which includes the College of Pharmacy.
Plaintiff alleged that he and others in the same or similar positions had been deprived of equal protection of the law and of due process of law under the Fourteenth Amendment, United States Constitution, through application of an unconstitutional retirement policy based upon age, including the use of an alleged irrebuttable presumption that persons age 67 or older are disabled; and also contending this policy is contrary to federal statutory prohibitions against age discrimination. He sought reinstatement with back pay and damages.
The court denied a preliminary injunction after a full hearing. The asserted class action rights were denied by decision from the bench after trial on the merits.
The retirement policy in issue reads as follows:
A member of the faculty or staff is automatically retired at age 67 years. Such retirement becomes effective at the close of the fiscal year during which the member shall have attained his 67th birthday. At the time of retirement, he shall be assigned emeritus rank. After attaining age 65, a faculty or staff member may elect to retire and assume emeritus rank as of the end of the fiscal year.
A member of the faculty or staff of emeritus rank is not eligible for reappointment to a former position. The University may, however, make use of his services, from year to year, in some other position, at a lower rank and salary, if and when a vacancy occurs. No such appointment shall be made after the close of the fiscal year in which the person has attained his 70th birthday.
The Board of Trustees promulgated, in 1962, through faculty Handbooks, a personnel policy entitled "Appointments, Promotions, Tenure, Dismissals" (Defendants' Exhibit # 2) which defined tenured and untenured status of academic employees, and which stated the general principles applicable in appointing persons to the faculty.
From an exchange of correspondence placed in evidence and from testimony given, the defendants have established by a preponderance of the evidence that plaintiff's application for post-retirement age employment was discussed by the Chancellor with the new Dean shortly after his arrival. The new Dean then began an informal review of the academic qualifications of plaintiff and the need for his services with some of the senior faculty members. The Chancellor, in accordance with regular appointment practices, informed plaintiff that any further employment would be dependent upon receipt by the Chancellor of a recommendation for employment from the Dean. Thereafter it would be necessary for plaintiff to receive the further recommendation by the Chancellor to the President, and through him to the Board of Trustees which was the ultimate hiring authority. The testimony indicated the Dean concluded that plaintiff had no particular qualifications needed by the College at that time, as plaintiff had not taught for many years prior to his stepping down as Dean. Accordingly, Dean Milne did not send a recommendation to the Chancellor that plaintiff be re-employed; and the Chancellor, not having received a recommendation to that effect, on April 20, 1977 wrote plaintiff that he would be retired on June 30, 1977. That letter referred to the retirement policy as the basis of the decision and contained no language or references stigmatizing plaintiff.
The Court finds the plaintiff had no contractual or legal right to continued employment *964 after June 30, 1977, since the policies of the Board of Trustees on retirement and on tenure must be read together. The policies of the Board operated to limit tenure rights and the duration of tenure concluded at the end of the fiscal year during which an academic employee reached age 67. The Arkansas tenure policy embraced the provisions incorporated in the 1940 Statement of Principles of the American Association of University Professors and those provisions, contained in the Statement, recognized that retirement for age was a limitation upon otherwise permanent tenure. The plaintiff in seeking employment for the period following June 30, 1977 was an untenured applicant for employment and the institution could, at its option, determine whether or not it would offer him employment.
This Court will not substitute its judgment for the expertise of experienced educators regarding the qualifications of plaintiff for post-retirement employment in terms of the needs of the College of Pharmacy and of the University.
Plaintiff continued to seek post-retirement employment by the University of Arkansas after receipt of the April 20, 1977 letter from the Chancellor. His activities in this connection caused the faculty members in the College of Pharmacy, acting unanimously but on their own initiative, to send the Chancellor a petition concerning plaintiff (Plaintiff's Exhibit # 5). A reasonable inference may be drawn from the language of that petition that the judgment of plaintiff's peers was that the hiring authority should not employ plaintiff past regular retirement age of 67 years.[1] The petition was not publicized by the University or even revealed to plaintiff until this controversy arose, and no stigma was attached to plaintiff through receipt of it by the University. The use of it in defense of this cause of action cannot constitute a stigma upon plaintiff regarding an employment decision which was made earlier.
There was evidence that plaintiff voluntarily assumed a lobbyist's role in seeking legislation, through the Governor and the Legislature, which would result in new retirement statutes in Arkansas.[2] Some complaints were received by the officials of the institution about these activities of the plaintiff as a University employee. The Chancellor counseled with plaintiff concerning these activities since there was evidence that some lobbying had been done on University time. There was no substantial evidence demonstrating that this discussion and counseling by the Chancellor was known to Dean Milne or that it influenced his decision not to recommend plaintiff for post-retirement employment.
The evidence supports the conclusion that the decision not to recommend plaintiff for post-retirement employment was not made in retaliation for the exercise of any valid right of free speech undertaken by the plaintiff. The defendants have established by a preponderance of the evidence that even in the absence of plaintiff's engaging in any constitutionally protected activities, he would not have been employed by the University past the end of the year during which he reached retirement age of 67 years.
There was substantial evidence that the use of an age-based retirement policy for employees of the University of Arkansas enhances employee morale by opening up promotion opportunities on foreseeable dates; permits the University to hire younger, more vigorous faculty members who, having been more recently educated, might bring newly discovered and organized knowledge and skills to the educational program of the University. It also permits the University to make employment available to minorities consistent with affirmative action laws and programs, prevents or lessens *965 the danger of arriving at the place where academic departments might consist only of older, less vigorous tenured professors; consequently this achieves a reasonable "mix" of a faculty of different ages leading to increased student interest and responsiveness. Definite planning can be made by the institution relative to staffing needs. The policy relieves the institution from making individual decisions on dismissals of tenured faculty for cause or for lack of competency which individual determinations might harm the self-esteem of employees, require peers to judge individual competency, and disrupt morale. It permits employees to plan for their retirement in an orderly manner against a date certain, all of which, in general, is relevant to and promotive of the legitimate State objective that its State University shall establish and maintain qualify offerings in its assigned instructional, research and public service responsibilities.
There is substantial evidence that the use of mandatory retirement policy bears a reasonable relation to the objective sought to be accomplished by the university. The same supportive reasons also constitute a sufficient rational basis for use of a discretionary hiring policy post-retirement as contained in the university's retirement plan, as well as the use of a mandatory age 67 as the basis for duration of tenure.[3]
The foregoing constitutes the Court's Findings of Fact[4] and the issues of law will now be examined.

FEDERAL AND STATE AGE DISCRIMINATION STATUTES BEAR NO RELEVANCE TO THIS CASE
The complaint refers to the "Age Discrimination Act of 1975", 42 U.S.C. § 6101 et seq. which applies to activities receiving federal financial assistance. However, that statute creates no private cause of action.
The basic federal statute defining a cause of action for age discrimination is the "Age Discrimination in Employment Act of 1967", 29 U.S.C. § 621, et seq. From the date of its enactment until a date following the retirement of the plaintiff on June 30, 1977, its provisions were directed at protection of persons age 40 through age 65. 29 U.S.C. § 631. At the time of his retirement, plaintiff was age 67 and without the scope of coverage of this federal statute.
Public Law 95-256, approved April 6, 1978 amended the "Age Discrimination in Employment Act of 1967" in two relevant manners. The protected age was increased to age 70.[5] 29 U.S.C. § 631(a), Repl. Plaintiff was retired on June 30, 1977 before that amendment was enacted. Extension of protected age to age 70 was not made retroactive. It is also noted the amendatory legislation exempted from the age 70 protected coverage the retirement of persons having tenure at institutions of higher education, until July 1, 1982. 29 U.S.C. § 631(d), Repl. Prior to that date such tenured persons may be retired on reaching age 65, or later, without any discrimination under this federal statute. The Senate Committee Report, pp. 8-9, relating to the statutory feature in Public Law 95-256 that tenured faculty would be without the protection of the extension of the protected age from 65 to age 70, stated:
Many colleges and universities maintain that for the foreseeable future the number of available faculty positions will be *966 closely related to the number of retirements, thereby making it difficult to employ younger professors, particularly women and minorities. Moreover, the financial burden on already hard-pressed institutions of higher learning may be increased by this legislation, because it may require the retention of highly paid senior employees for additional years. Concerns were expressed by the committee that although it is theoretically possible to discharge tenured faculty for cause, the difficulty of objectively evaluating the performance of such employees makes good cause discharges difficult. The committee therefore adopted an amendment offered by Senator Chafee to permit colleges and universities to maintain compulsory retirement policies for faculty at age 65 or above who are serving under a contract of unlimited tenure or similar arrangement providing for unlimited tenure. S.Rep.No. 95-493, 95th Cong., 1st Sess. 8-9 (1977), U.S.Code Cong. & Admin. News 1978, pp. 504, 511-12.
Further, plaintiff filed no "charge" with the Secretary of Labor, a predicate for invocation of rights under this federal statute. Such action is a condition precedent to a civil action grounded in this statute. 29 U.S.C. § 626(d).
The retirement policy of the state institution is `state action' and was applied to retire the plaintiff from employment. Plaintiff invokes equal protection and due process concepts from the fourteenth amendment as his challenge to the policy.[6]

SCOPE OF JUDICIAL REVIEW OF RETIREMENT POLICY
Historically, in the federal courts, equal protection analysis of state statutes and policies have allowed wide latitude to the states to deal with the "practical problems of government". Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). The court dismissed, for want of a substantial federal question, an attach upon an age 70 retirement rule for judges. Rubino v. Ghezzi, 512 F.2d 431 (2d Cir. 1975), cert. denied sub nom. Nusbaum v. Ghezzi, 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975).
Where the validity of Sunday "Blue Laws" was at stake, the Supreme Court has declared that states have a wide scope of discretion in enacting laws which affect some groups of citizens differently from others. In fact, as to equal protection:
The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).
The McGowan test was restated in Feinerman v. Jones, 356 F.Supp. 252, 256 (M.D. Pa.1973), in these words:
The traditional equal protection standard looks to the reasonableness of the classification in light of its possible intended purposes. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The classification must bear some rational relationship to a legitimate end and will be set aside as violative of the Equal Protection clause only if based on reasons totally unrelated to that goal. McDonald v. Board of Education Commissioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Under this test, the party challenging the constitutionality of a statute has the burden of proving that the statute denies him equal protection and it *967 will not be set aside if it is reasonably related to some permissible legislative or administrative purpose. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940); Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). (emphasis supplied)
The action of the state is "presumptively valid", San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), thus casting a "heavy burden" on one who alleges unconstitutionality. Assumptions about the purposes of a state statute may be made in terms of their likelihood, and if the assumptions demonstrate that the statute is not irrational, it will be upheld upon that basis. In fact, a district court rejecting such assumptions will be reversed. Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976). The Hughes case is cited with approval in Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), the inference being that likely assumptions supply a conceived state of facts supportive of the classification adopted. In Vance, which was a challenge to a retirement law, the burden of conceiving a state of facts was cast upon the one who would invalidate the statute and was phrased in these terms:
In an equal protection case of this type, however, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.
440 U.S. 111, 99 S.Ct. 950.
Judicial pronouncements with reference to this standard of review of equal protection arguments have reached these conclusions: "Accordingly, the state need only articulate a rational basis for its statutory scheme." Johnson v. Lefkowitz, 566 F.2d 866 (2nd Cir. 1977), cert. denied sub nom., Johnson v. Abrams, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979) reh. denied 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979) (N. Y. Retirement law for state employees); ". . . it is of no constitutional moment that the degree of rationality is not as great with respect to certain ill-defined subparts of the classifications as it is with respect to the classification as a whole" since the federal court should not interfere with the policy decisions of the state; New York City Transit Authority v. Beazer, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979) (state employment rule barring methadone users); the contention that the state provision is unwise in not being more precise is not sufficient to cause the statute to fall; Trafelet v. Thompson, 594 F.2d 623 (7th Cir. 1979); the state provision must turn on a basis which is "wholly irrelevant"; McGowan v. Maryland, supra, or a basis which is "irrational"; McCarthy v. Philadelphia Civil Service Commission, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (residency requirement for municipal firemen).
Dandridge v. Williams, supra, holds that there is no constitutional infirmity merely because the classification is not made with mathematical nicety. Use of a general rule in classifying, rather than making individualized judgments of each employee, goes only to lack of perfection, and the under or overinclusiveness of the classification does not affect its validity. New York Transit Authority v. Beazer, supra, and Vance v. Bradley, supra. The two most recent Supreme Court decisions considering constitutionality of state-imposed retirement are Massachusetts Board of Retirement, et al. v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and Vance v. Bradley, supra.
In Murgia, the Supreme Court said it is necessary to ". . . state only briefly our reasons for agreeing that strict scrutiny is not the proper test for determining whether the mandatory retirement provision denies appellee equal protection." 427 U.S. 312, 96 S.Ct. at 2566. A claimed right of governmental employment per se is not a "fundamental right" and regulation of employment opportunities does not operate upon a "suspect class". And finally, "[e]ven *968 if the statute could be said to impose a penalty upon a class defined as the aged, it would not impose a distinction sufficiently akin to those classifications that we have found suspect to call for strict judicial scrutiny." 427 U.S. 314, 96 S.Ct. at 2567.
In Vance, the same scope of judicial review is sanctioned in these terms:
Appellees have not suggested that the statutory distinction between Foreign Service personnel over age 60 and other federal employees over that age burdens a suspect group or a fundamental interest; and in cases where these considerations are absent, courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.
440 U.S. 96-97, 99 S.Ct. at 942.
Use of the "rational basis" test has found practically unanimous support in the age and retirement cases. Weisbrod v. Lynn, 383 F.Supp. 933 (D.D.C.1974), aff'd, 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 (1975) (dismissed for want of substantial federal question) reh. denied 423 U.S. 886, 96 S.Ct. 162, 46 L.Ed.2d 118 (1975); Weiss v. Walsh, 324 F.Supp. 75 (S.D.N.Y.1971), aff'd 461 F.2d 846 (2d Cir. 1972), cert. denied 409 U.S. 1129, 93 S.Ct. 939, 35 L.Ed.2d 262 (1973) reh. denied 410 U.S. 970, 93 S.Ct. 1439, 35 L.Ed.2d 706 (1973); Armstrong v. Howell, 371 F.Supp. 48 (D.Neb.1974); Rubino v. Ghezzi, supra; Talbot v. Pyke, 533 F.2d 331 (6th Cir. 1976); Klain v. Pennsylvania State University, 434 F.Supp. 571 (M.D.Pa.1977), aff'd without op. 577 F.2d 726 (3d Cir. 1978); Trafelet v. Thompson, supra; Palmer v. Ticcione, 576 F.2d 459 (2d Cir. 1978) (affirms dismissal for want of substantial federal question), cert. denied 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979).
In Weiss v. Walsh, supra, the argument that age-based distinctions should be subjected to "strict scrutiny" was rejected, the court saying that age is a classification that cuts across racial, religious and economic lines and generally bears some relation to mental and physical capacity; it therefore is unlikely to be an invidious distinction. That court's conclusion, upheld by the Second Circuit (461 F.2d 846 (1972)), with certiorari denied (409 U.S. 1129, 93 S.Ct. 939, 35 L.Ed.2d 262 (1973)) and reconsideration of that denial refused (410 U.S. 970, 93 S.Ct. 1439, 35 L.Ed.2d 706 (1973)), was:
Notwithstanding great advances in gerontology, the era when advanced age ceases to bear some reasonable statistical relationship to diminished capacity or longevity is still future. It cannot be said, therefore, that age ceilings upon eligibility for employment are inherently suspect, although their application will inevitably fall unjustly in the individual case. If the precision of the law is impugnable by the stricture of general applicability, vindication of the exceptional individual may have to attend the wise discretion of the administrator. On its face, therefore, the denial of a teaching position to a man approaching seventy years of age is not constitutionally infirm. . . . (324 F.Supp. 75, 77).
In the Arkansas case of King v. Cochran, 419 F.Supp. 54 (W.D.Ark.1976), aff'd 551 F.2d 1133 (8th Cir. 1977), a black teacher filed action under 42 U.S.C. § 1983. He contended that he was physically and mentally able to continue teaching, through age 65, but had been retired under a school district retirement policy which mandated termination at age 65 if with twenty years of experience, and at age 62 if with thirty years of experience. After holding that no due process rights were involved, the case was dismissed since there was no law conferring tenure and hence there was no "expectation *969 of continued reemployment and thus . . . no property interest in continued reemployment as to any teacher." 419 F.Supp. 57, citing Williams v. Day, 412 F.Supp. 336 (E.D.Ark.1976) aff'd 553 F.2d 1160 (8th Cir. 1977).

WHETHER THE UNIVERSITY'S RETIREMENT POLICY AFFORDS EQUAL PROTECTION OF LAW
Plaintiff has asserted his belief that the University policy on retirement establishes an irrebuttable presumption, i. e., that one of age 67 or older is per se disabled, and hence such makes it invalid. The principal cases cited are Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). None of these is a retirement case.
As already noted in this opinion, the use of a general rule to classify, rather than a law or policy which calls for the making of individualized judgments concerning each employee, evidences, at most, only a lack of perfection and does not affect validity. The same argument plaintiff makes here regarding individualized rules was made, and rejected, by the Supreme Court in the 1979 decision in New York Transit Authority, supra, in connection with an equal protection analysis of an employment policy. The argument goes to the wisdom of the policy adopted and its perfection, and whether it could have been drawn with greater specification. Cases such as Dandridge, supra, and its progeny, as well as the Vance and Murgia decisions, establish that this argument is irrelevant to whether equal protection requirements are met. In Murgia it was held that the fact the policy was not more precisely drawn does not undercut rationality of the policy, since the latter may be furthered by a maximum age limitation and the best means for achievement of the purpose are not required to be utilized. Vance echoes that perfection is not required and adds that the fact that the use of other alternatives might achieve approximately the same results is irrelevant in testing for rationality.
The irrebuttable presumption argument for testing retirement measures as to possible equal protection violations has almost universally been rejected. In Vance, neither the majority opinion nor Mr. Justice Marshall's dissent utilizes it. It is, therefore, rejected as a useless appendage in the making of the equal protection analysis. Trafelet v. Thompson, supra (that court noting similar rejection of it in Palmer v. Ticcione, supra).
Plaintiff has also contended he is mentally and physically fit to continue in employment. Such considerations are irrelevant. Where one was offered a faculty position and the offer was later withdrawn because the applicant was over 65 years of age, the denial of the position was held not to be constitutionally infirm even though the applicant was in physical good health. Although a retirement statute required judges to retire at 70, and some would still be "highly competent" at that age, the statute nevertheless was held valid. Trafelet v. Thompson, supra. It is not necessary to offer current empirical proof that health and energy tend to decline by the age chosen in order that a measure may be sustained. Vance v. Bradley, supra. The relatively early case of McIlvaine v. Pennsylvania State Police, 6 Pa.Cmwlth. 505, 296 A.2d 630 (1973), aff'd 454 Pa. 129, 309 A.2d 801 (1973), appeal dismissed 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974), had, like Murgia, involved compulsory retirement of a policeman who argued his continued fitness to serve. The United States Supreme Court dismissed his case, finding want of any substantial federal question. In Weisbrod v. Lynn, supra (involving retirement of federal employees generally, including "sedentary", and presumably intellectually-occupied, federal employees), the Court of Appeals ordered a three-judge court to consider the argument that the Supreme Court's McIlvaine decision had upheld the retirement provision only because of the physical vigor needed for police work. The *970 three-judge court referred to this argument as "idle speculation" and dismissed the case for want of a substantial federal question. 383 F.Supp. 933 (D.D.C.1974). The Supreme Court affirmed, without opinion, 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 (1975).
In Palmer v. Ticcione, supra, the court held that:
Unrelated to any notion of physical or mental fitness, a state might prescribe mandatory retirement for teachers in order to open up employment opportunities for young teachers  particularly in the last decade when supply has outpaced demand, or to open up more places for minorities, or to bring young people with fresh ideas and techniques in contact with school children, or to assure predictability and ease in establishing and administering pension plans. A compulsory retirement system is rationally related to the fulfillment of any or all of these legitimate state objectives.
576 F.2d 462.
The Arkansas precedent on fitness as an element is King v. Cochran, supra. The teacher who was mandatorily retired there contended that he was physically and mentally able to continue. Both district court and eighth circuit found a rational basis for the retirement policy and sustained its validity.
The issue is the rationality of the retirement measure, and not whether the state made studies in advance proving the effectiveness of the policy. Current empirical proof in support of the measure is not required. Vance v. Bradley, supra. In Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976), the court stated:
The State is not compelled to verify logical assumptions with statistical evidence.
Lack of uniformity in choice of a retirement age does not make the University policy invalid. In Murgia, Massachusetts had higher mandatory retirement ages for state employees other than policemen, and was upheld even though the retirement ages were different.
An Illinois retirement statute directed only at retirement of "sedentary" judges was upheld against the contention that it was invalid because the state used other ages for retirement of other state officials. Trafelet v. Thompson, supra. An expert witness testified for the plaintiff that retirement was an individualized event and that the use of age to compel retirement was not the best approach to the problem.
Murgia, supra, spoke on this issue as follows:
That the State chooses not to determine fitness more precisely through individualized testing after age 50 is not to say that the objective of assuring physical fitness is not rationally furthered by a maximum age limitation. It is only to say that with regard to the interest of all concerned, the State perhaps has not chosen the best means to accomplish this purpose. But, where rationality is the test, a State "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." (427 U.S. 307, 316, 96 S.Ct. 2562, 2568, 49 L.Ed.2d 520)
The retirement policy of a university needs only to be "rational" and not necessarily the plan which the court might consider to be the best way to accomplish the purposes for which it is established.

WHETHER THE UNIVERSITY POLICY HAS A RATIONAL BASIS FOR ITS VALIDITY
President Charles E. Bishop, Chancellor Ward, and the Dean of the School of Pharmacy each articulated reasons which support the university's retirement policy. President Bishop, in response to a query from the bench, stated that the University of Arkansas could not be operated as a quality state institution of higher learning without having an employee retirement policy. These reasons, which are directed to excellence of performance in terms of the university's response for quality in instruction, research and public service, are enumerated *971 in the court's findings previously set out herein.
In Vance v. Bradley, supra, we find judicial support, under the rational basis analysis, for the proposition that a mandatory retirement measure assures room at the top, at a predictable time, for those who wait for promotion opportunities, thus spurring morale and stimulating superior performance in the ranks.
Analogous reasons held to furnish a sufficient rational basis for a retirement policy similar to the one in the case at bar are found in these precedents: Cannon v. Guste, 423 U.S. 918, 96 S.Ct. 257, 46 L.Ed.2d 245 (1975), aff'g Civ. No. 77-3211 (E.D.La. 1975) (maintaining a vigorous and efficient civil service; establishing a feasible promotion system); Weiss v. Walsh, supra (hedge against diminished capacity due to age); American Federation of Teachers, etc. v. Los Angeles Community College, 63 Cal. App.3d 800, 134 Cal.Rptr. 111 (1976) (increased job opportunities so all qualified persons may share in public employment; enhancement of planning); Rubino v. Ghezzi, supra (increased efficiency of judges; encouragement of young attorneys with judicial aspirations through job opportunities); and King v. Cochran, supra (local precedent exists).
Plaintiff also contends that part of the university policy which permits employment past retirement age in limited circumstances has been unconstitutionally applied in his case. A number of the cases here reviewed statutes or other retirement measures, including a provision under which a person might be employed past the retirement age within the discretionary judgment of the employer. Such features have been sustained on similar rational bases as were the retirement age requirements. Cannon v. Guste, supra (employee hired for one additional year after retirement age reached, thereafter challenged the retirement policy; policy upheld); Fazekas v. University of Houston, 565 S.W.2d 299 (Tex.Civ.App. 1978), appeal dismissed 440 U.S. 952, 99 S.Ct. 1487, 59 L.Ed.2d 765 (1979) (post-65 employment discretionary with employer; upheld, citing Murgia); Belcher v. Gish, 555 S.W.2d 264 (Ky.1977) (when became nontenured on reaching age 65 retirement, could be hired but at grace of employer; policy upheld); see also, to the same effect, Palmer v. Ticcione, supra, and Johnson v. Lefkowitz, supra.
The court commends Dr. Mittelstaedt for his desire to continue to serve the College of Pharmacy past retirement age and for his previous years of dedicated service, however, it has been recognized that there is no "property interest" as to any post-retirement employment. It is, at best, a right to be considered if one applies Klain v. Pennsylvania State University, supra. Dean Milne testified that he did consider Dr. Mittelstaedt and checked on his qualifications and what use the School of Pharmacy might make of them. Dr. Mittelstaedt admitted, on cross-examination, that his application might have received consideration without his knowledge.
Plaintiff's argument that the procedure used for post-retirement employment was vague, arbitrary and capricious is predicated upon the erroneous assumption that plaintiff had a legally enforceable right to become an employee merely because he sought employment. In terms of liberty of contract, he had a right to offer his services. The university had a right to decide not to contract with him. Neither the Dean nor the Chancellor saw a university need for plaintiff's services as a future employee and neither was willing to recommend his employment by the university. Those decisions were within their respective responsibilities as administrators. Discretionary judgments were involved. Chancellor Dennis testified that he had known and worked with plaintiff for many years. Dean Milne testified that he checked on plaintiff's qualifications, including his publications and teaching experience, and sought peer evaluation about him.
One issue before the court is the duration of the employment contract. The "Appointments, Promotions, Tenure and Dismissal" policy of the Board of Trustees (Defendants' Exhibit # 2) refers expressly to *972 the fact that the Board has adopted, in principle, the "1940 Statement of Principles of the American Association of University Professors". The 1940 Statement recognizes that retirement terminates tenure, viz.:
ACADEMIC TENURE. (a) After the expiration of a probationary period, teachers or investigators should have permanent or continuous tenure, and their service should be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies. [emphasis supplied]
Since retirement is not a "dismissal" within the meaning of the board's policy, and has nothing to do with firing for cause (for which a hearing is stipulated in the policy), no hearing was necessary when the duration of one's permanent contract came to an end on reaching retirement age.[7] Employment for a definitive period terminates by its own terms at the end of that period. Not only does the retirement policy restrict the duration of tenure, the retirement age may be reduced in further restriction thereof. See, Fazekas v. University of Houston, supra.
When plaintiff reached the prescribed retirement age of 67, he no longer had tenure (the assurance of a next successive contract offer). The portion of the retirement policy that permitted hiring persons past 67 specified that such was for one year at a time only (in no event past age 70) which was the antithesis of tenure.
Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) holds that an untenured faculty member sustains no fourteenth amendment due process deprivation of rights from the institution's decision not to rehire for the next year following the expiration of a current contract. Further, there is no deprivation of any protected liberty interest from such refusal to contract so long as no public derogatory stigma is attached to the former employee by the employer. Generally, such employee has no procedural right to a hearing as to why he is not reemployed; however, the refusal to extend employment must not be based on an impermissible reason.
The Roth decision has been widely accepted. It is the rule in Arkansas federal courts and in the eighth circuit. Evans v. Page, 516 F.2d 18 (8th Cir. 1975); Williams v. Day, supra; Freeman v. Gould Spec. Sch. Dist., 405 F.2d 1153 (8th Cir. 1969), cert. denied 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969); Cato v. Collins, 539 F.2d 656 (8th Cir. 1976).
Roth has been applied in retirement cases. See, Nurenberg v. Ward, Talbot v. Pyke, and Klain v. Pennsylvania State University, all cited earlier.
The opportunity to be a public employee is not a protected legal or constitutional right as such. Cf., Miller v. Hulsey, 347 F.Supp. 192 (E.D.Ark.1972); Norton v. Blaylock, 285 F.Supp. 659 (W.D.Ark.1968), aff'd 409 F.2d 772 (8th Cir. 1969).
No procedural due process hearing was required to be afforded plaintiff here, either on the issue of whether, having reached age 67, he was to be retired, or when, as a job applicant without tenure he applied for post-retirement discretionary employment. Judge Paul X. Williams was affirmed when he so ruled regarding the seeker of a next teaching contract who was untenured. Evans v. Page, supra. Accord, Cato v. Collins, supra; Freeman v. Gould Spec. Sch. Dist., supra.
It may be noted, in terms of the Roth case rule, that Dr. Dennis' letter of April 20, 1977 to plaintiff, in substance merely communicated to plaintiff that the retirement policy would be applied to him, and attached no stigma whatsoever. Dean Milne wrote a commendatory letter to plaintiff regarding his now ended employment. (letter of June 21, 1977) Chancellor Dennis had earlier written plaintiff. (letter of September 22, 1975)[8] These are the antithesis of imposing any stigma concerning his employment performance.
*973 Plaintiff claims that his vocal opposition to the retirement policy was a substantial or motivating factor in his not being employed after he reached age 67. It is undisputed that plaintiff wrote, spoke and lobbied actively against the university's policy. See, footnote 2, p. 964.
Plaintiff (Plaintiff's Exhibit # 7) admits in the second paragraph of the letter that some of his activities concerning retirement problems and retirement legislation were done on university time. An employer has a legitimate interest in seeing that its employees perform their work in conformity with the employment. Hockstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 233 (1st Cir. 1976), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973); on remand, Green v. McDonnell Douglas Corp., 390 F.Supp. 501 (E.D.Mo.1975), aff'd 528 F.2d 1102 (8th Cir. 1976).
In Williams v. Day, supra, it was contended that the plaintiff had been discharged because of his exercise of first amendment rights. The opinion noted that although this is impermissible, courts must exercise care not to permit the use of speech to become a cloak for protection against the consequences of one's misconduct. It is the duty of the court to get to the real reasons for the action taken and as previously indicated, the court finds that exercise of plaintiff's right of free speech was not the cause of the refusal to extend his employment.

JUDICIAL DEFERENCE IS OWED TO THE FREEDOM OF A UNIVERSITY TO DETERMINE SELECTION OF ITS EMPLOYEES TO OFFER ITS ACADEMIC PROGRAM
Many cases may be cited for the extreme reluctance of courts, both federal and state, to substitute judicial judgments for those made by educators on educational affairs. In Frazier v. Curators of University of Missouri, 495 F.2d 1149 (8th Cir. 1974), the following was quoted with approval from a decision involving Howard University:
It would be intolerable for the courts to interject themselves and to require an educational institution to hire or to maintain on its staff a professor or instructor whom it deemed undesirable and did not wish to employ. For the courts to impose such a requirement would be an interference with the operation of institutions of higher learning contrary to established principles of law and to the best traditions of education.
Where personal evaluations of faculty members are before the court, it is a delicate question whether it should even consider substituting its judgment for those having expertise in the educational field. Keyes v. Lenoir-Rhyne College, 552 F.2d 579 (4th Cir. 1977), cert. denied 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); Peters v. Middlebury College, 409 F.Supp. 857 (D.C.Vt.1976). See also, Regents of University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).
In Scheelhaase v. Woodbury Central Community Sch. Dist., 488 F.2d 237, 243 (8th Cir. 1973), cert. denied 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974), this caveat was stated:
It is our holding that the administration of the internal affairs of the school district before us has not passed by judicial fiat from the local board, where it was lodged by statute, to the Federal court. Such matters . . . are peculiarly appropriate to state and local administration.
In light of the foregoing findings of fact and conclusions of law, the complaint of the plaintiff against the defendants herein must be and it is hereby dismissed.
NOTES
[1] Although there was some testimony to the contrary, the court finds the tenor of the letter itself is substantial evidence of this determination.
[2] Plaintiff had a right to speak or lobby on this issue as a private citizen during his personal time, not during his hours of employment since he was not authorized by the University to speak for it on this subject.
[3] The court notes there are indeed individuals who serve efficiently and well even beyond the 67/70 years set out in the university's retirement plan. Notable among these exceptions are Dr. Robert A. Leflar, educator, author, and Distinguished Professor at the University of Arkansas Law School (Fayetteville) and Honorable John E. Miller, United States District Judge for the Western District of Arkansas, who rendered outstanding judicial services beyond his 90th birthday. But these exceptions cannot justify the court's invalidating the University of Arkansas's retirement policy unless compelling legal reasons so dictate.
[4] Some of these facts were controverted by the plaintiff's evidence, but the court finds the substantial evidence to be as above indicated.
[5] According to testimony of Dr. Charles Bishop, President of the University, the policy of that institution has now been amended to conform fully with the 1978 federal statute.
[6] While plaintiff invokes both due process and equal protection regarding the validity of the retirement policy, as such, it has been recognized that the allegation of due process in this regard is analytically very similar to the equal protection argument. Palmer v. Ticcione, 576 F.2d 459 (2d Cir. 1978) cert. denied 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979) (Tenured teacher compelled to retire; dismissed for want of a substantial federal question.) See also, n.1, Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).
[7] Plaintiff contended lack of a hearing had deprived him of due process.
[8] These letters were all exhibits introduced at the trial.